Down into the Legs to get water. Oh, you can have some judicial water. I wouldn't drink that, though, Mr. Herrick, it'll probably slow you down, it doesn't do as much as I do. Okay, when you're ready. Good morning, Your Honors. Good morning, Mr. Herrick. A little brief story getting started here. Dependable Packaging is a small Miami company, and in the audience today, four corporate officers have come up to Miami to listen in on our oral arguments today. They also, we have about, dollar-wise, we have about $500,000 at risk here, not in this case, but in the protests. Is that in our record? No, Your Honor. Stick to the record. Yes, Your Honor. We've also submitted information about a video to the court that was taken by CNN, and the clerk said it is a matter of the record that I presume it made its way to the judges. I'm not sure. Nobody's sure where it is. But, and it was made after the time that the joint appendix was closed, so it's not a matter of the record, because it's submitted as a supplement to the record. And what authority do you have that we should review? It was submitted pursuant to Federal Rules of Appellate Procedure 28J. And why is it a ballot supplemental authority? Why is it a ballot? Yes. Because it describes in video the process of my client's product. Was it before the trial court? Pardon me? Was it before the trial court? No, Your Honor. The filming was done after the close of the joint appendix and the appeals process, so it was not before the trial court. On page three of your opening brief, Mr. Herrick, you say that dependables glass containers are in their own class and heading 7010, that they are clearly principally used for wet packing and conveyance. Isn't any vase which one fills at the sink and places flowers in and then carries it to the table used for wet packing and conveyance of flowers? It could be interpreted that way, yes, Your Honor. You say on page 14 that the actual use of the containers was to be used for wet packing and conveyance from the flower warehouses to retail outlets. But it's not thrown away and the flower's been repacked, is it? They're sold in those items. They're sold. The flowers are placed in my client's containers, delivered to stores, wherever they may be, and they are sold in that condition, yes. And they're sold by the stores as being in vases, are they not? Yes. How many flowers fit in a bud or trumpet vase? I'm not exactly sure, but perhaps 8 to 12. Is there evidence in the record that retailers pay extra for the flower vase combination, flower container combination, as opposed to just the flowers? There's evidence in the record that they are paying more when the containers contain cut flowers, yes. And in fact, the retailers then charge more for those. Yes, that's correct. Pages 21 and 22, you cite to the appendix at 126, 127, for the statement, most supermarkets do not have florists on their premises that can care for flowers that tend to be fragile and so on. I couldn't get that out of 126, 127. Where do you get it? If I may, Your Honor? Sure, of course. And I think you want to look at the bottom of 126 and the top of 127 and starting at line 3, the answer, which begins, some of them might. And the question was, I'm sorry? The question was, you make a statement, most supermarkets do not have florists on their premises that can care for flowers that tend to be fragile and so on. I believe this was from my client's observations that they made when they were at the stores. Excuse me, but you cited to pages 126 and 127 on the record. I'm asking you where in those pages is the support for that statement. I pointed to those lines because it seemed to me that was the most likely thing you were going to say, but that doesn't seem to support it. I don't see it here myself right now, but during my rebuttal, if I can track it down, I will. Oh, sure. Go ahead, Mr. Herr. You got anything else? So, continuing on, we've argued that the glass containers are used for packing and conveying and this dependable is a packaging company. If they were, for example, if the company was known as dependable indoor decorative glassware company, they perhaps would be importing vases. However, they're not. They're a packaging company. What they import is exclusive for packing houses of cut flowers and they're for wet packing of cut flowers for the ultimate supermarkets and other stores that sell these commodities. And we believe that the actual, when we're talking about the principal use of the product, that the actual use is the most important, we believe the most important aspect of the factors you consider when you're going through the use analysis. And the actual use is in packing. That's what it's used for. My client does not sell their vases retail. It's only the packing houses. Isn't it more fair to just acknowledge that these glass containers have dual use? One is for packaging and conveying and the other one is to have in your house, in your home, when you're sitting there looking at your flowers. Well, not my, I understand what you're saying, but not my client's products. They could be considered dual use. For example, a vase is, if you have a vase and it's used for cut flowers, but then there's no evidence that if you're bringing in a vase, a vase, whether the vase can be used for packing or conveyance. We don't know. There was never any evidence that it came in. There is evidence that my client's product, which is used for packing, could be used and be taken home with the flowers. But just a pure vase coming in, no evidence that it could be used in wet packing and conveyance of cut flowers. We don't know. You refer to your client's product as vases. Is that how they refer to them as well? No, well, there is evidence on the record that it could be used, so the entry papers and so forth. But to us, they're glass containers for packing and not vases. And actually, there's nothing in the Harmonized System that even mentions vases. You have to go to the explanatory notes, but obviously the Harmonized System is more proficient than that. Thank you. You're welcome. Thank you.  Yes, sir. May it please the Court. We have an apparent dispute between 7010 and 7013, 7010 being articles of glass for conveyance of packaging and 7013 being household articles of glass, glassware of indoor decoration. Why I say it's apparent is because the record evidence and the briefs show that the information about these vases, and we have samples of the vases that are up here, show that it really does fit. The lower court got it right. It really does fit in 7013. As plaintiff has stated at A172 in plaintiff's deposition, the design of dependable glass containers are decorative in nature and aid in the sale of the flowers. So that answers, I think, the previous question, do they aid in the sale of flowers, but they're also decorative. They're admittedly designed to be decorative, and that's both of those. Again, on page 19 of the blue brief, there's an admission which helps in favor of the holding of 7013. Retail costs, and it states on page 19, retail costs, the retail customer does not, I should say, there was a mistake. Let me read it again. The retail customer does not want to go through, go to the trouble of buying a vase and flowers separately. They want the ease of having the container and flowers as a unit ready to display in their home or office. So the import of that is that they're both buying the vase and the flowers. The consumer at the retail market is buying the vase and the flower because they want both, and they want both to display in the home or office. That is exactly what indoor decorative items are. They're for display in the home or office. And if you could go through the ENs for 7013, and the ENs are guidance in how the HCS should be looked at. It says that, that's where it says, indoor decorations are the type of light vases. So, and if you look at 7010, the proposed heading, 7010 are for items for conveyance of packaging. They're usually items that have some sort of a closure or some sort of glass or lugs at the top. So you could take a cap or something of that manner in which the thing itself is actually going to be able to convey the item that's inside sufficiently. And while plaintiff or an appellant has stated that they sell to warehouses where they actually pack flowers in the vases, they actually then go beyond that and they do a lot of packaging of that combined unit that they want to sell at the retail store. They do corrugated partitioning, putting them, putting plastic around that, putting them in a box, and that's really protecting the combined unit, which is what the retail, the supermarket, the retailer is really selling. They're selling the displayed combined unit of the glass container, the glass vase and the flowers together. And that's what the retail purchaser brings home is capable of displaying in their home. I thought Mr. Grandio testifying on behalf of the appellant was very candid. He was asked if, for example, his product helped in selling as a matter of display, and he said yes to that question, display is better. He said you can't ship wet pack in a bucket and give the different levels that you want to show them on. Yes, I agree. That is so. And I think the lower court, when going through the carbon impactors, properly analyzed the issues bringing in these aspects of the thing itself and how it's, there's really, both sides are really admitting that and coming to the same conclusion that the retail or the retail purchaser is actually using this item to display in their home and combine that with the agreement by the appellant that they were made to be decorative. And if you have any questions, Your Honors, then I would ask that the lower court be affirmed. Thank you. Thank you, Mr. Cannon. Mr. Herrick, you have seven. Thank you, Your Honor. I'm trying to track down your question regarding the appendix. Yes, sir. Let's see. I'm looking at A121 page from the deposition at the bottom. Okay. Not where you cited me, but I'll take a look. Pardon me? I said that's not where you cited me to on 21 and 22 of your brief. Yes, I know. Well, we supply the flowers. We have been to supermarkets. We have seen. I see, and it says some supermarkets might have an in-house florist, but the majority we supply, and he gives some names, don't. Right. How does that support your statement, most supermarkets do not have a florist? Well, I'm using this testimony to support the fact that he observed in going to supermarkets that most of the supermarkets do not, that he observed. Again, your client was very careful and candid in his testimony, Mr. Grandio. He said some might have an in-house florist, but the majority we supply don't. That's not the same as your statement. Your statement says most supermarkets don't have a florist. I think the statement in the- Did you misspeak? Pardon me? Did you misspeak? I perhaps did misspoke, yes. Why don't we stick with that then? Also, just briefly going back to your opening question is that if you, your comment rather, that if you have a container, you go to the kitchen, you put water in, would that not be packing? We have referenced in our brief the fact that customs ruling had indicated that they're really talking, that they create a scope for the class of glass containers commercially used to convey solid or liquid products. So we're really not talking about what you do in the house, go in the kitchen, we're talking about- That class seems to indicate that they're covered. Well, covered, Your Honor? Yes, that they can close them. Well, I was thinking about that when I was preparing this, about the closure issue. And closures for our product really wouldn't make any sense for a couple reasons. One is if you have a closure and you put the closure on the top of the product, then you can't put the flowers in because the closure is blocking the flowers going into the container. Or if you put the flowers in the container, then you can't close it with a closure because the cut flowers would interfere with the closure. So we're saying the closure means nothing. It just doesn't apply to this product because it wouldn't make any sense in effect. And going on, to us, this lower court decision is really, I would phrase it as a fugitive decision, my characterization, because there are other cases, for example- Mr. Herrick, if the record indicates it, are cut flowers ever shipped in closed containers? Not to my knowledge, Your Honor. Not that I know of. In fact, the question about the video, can I ask the court if they are aware that we have requested the court to look at the video or not? We're aware of it. Pardon me? We're aware of your request. Oh, okay. But if I could allude to the video, even though- It's outside the record. I know it's outside the record, but it was an attempt to supplement the record. So would I be permitted to do that or not? No. No, okay. So, as I said, it's a fugitive decision. Why? There's three cases, for example. Latitude's case, which we referenced in the lower court, found that the glass containers were classified under 7010. The Kraft case also found the same. And the case involving automatic. There's three cases, all came to the same conclusion, that glass containers are classified under 7010. And if you look at 7013, anything classified under 7010 cannot be classified under 7013. So the analysis, I would think, would be that the court would go immediately to 7010. You have a description of a glass container for packing and conveyance is what we have here. And if you come to the conclusion that the actual use of that glass container is for packing and conveyance, then you never get to 7013 because it is now precluded. You cannot go to 7013 once you've satisfied that the actual use is under 7010. So we believe, as I said, that the lower court's decision, in light of other analysis than in other cases, is a fugitive decision. And it should be reversed by this court. And the finding should be made that my client's products are properly classifiable under 7010 and not 7013. Mr. Eric, one question. A153 is part of your client's catalog. Am I correct? In the appendix, Your Honor? Yes. A153? Yes. Yes. Okay. Thank you. Any further questions? Thank you, Your Honor. I appreciate it. Thank you.